<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| PATRICK MOSS, | : | |
| | : | |
| Plaintiff, | : | Civ. No. 03-5000 (GEB) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| MCDONALD'S CORPORATION, et al., | : | |
| | : | |
| Defendants. | : | |

<u>**BROWN, District Judge**</u>

This matter comes before the Court upon defendant McDonald's Corporation's ("McDonald's") motion seeking: (1) enforcement of a settlement agreement allegedly entered into by McDonald's and plaintiff Patrick Moss ("Plaintiff"); (2) damages for Plaintiff's alleged breach of that agreement; and (3) sanctions against Plaintiff for his continuing refusal to acknowledge the validity of that agreement. The Court, having considered the parties' submissions and decided the matter without oral argument pursuant to Federal Rules of Civil Procedure Rule 78, and for the reasons set forth below, will: (1) grant the motion to enforce the agreement; (2) deny the motion for damages for the alleged breach of that agreement; and (3) grant the motion for sanctions against Plaintiff.


I.      **BACKGROUND**

On October 21, 2003, Plaintiff, who was employed by McDonald's at the time, filed a complaint against McDonald's and seven of its employees for their allegedly wrongful conduct in denying him certain employment opportunities. (Compl. ¶¶1-9, 29-45.) On January 26, 2004, Plaintiff filed the First Amended Complaint, which no longer included four of those original defendants, but was based on the same claims. (First Am. Compl. ¶¶1-6, 26-42.) Plaintiff

subsequently brought two related lawsuits in state court.  On February 13, 2004, he filed a

complaint in the Superior Court of New Jersey in Somerset County against the four defendants

that were not included in the First Amended Complaint ("Somerset Action").  (Finger Cert. Ex .

D.)  On or about December 2, 2004, Plaintiff filed a separate complaint in the Superior Court of

New Jersey in Essex County against the Defendants in this action ("Essex Action").  (Finger

Cert. Ex. E.)  Both state actions were based on many of the same allegations made in this case.

(*Compare* First Am. Compl. *with* Finger Cert. Exs. D and E.)  On May 31, 2005, the Superior

Court of New Jersey in Somerset County dismissed the Somerset Action.  (Finger Cert. Ex. G.)

The Essex Action remains pending.

On July 11, 2005, Magistrate Judge Hughes conducted a settlement conference with

Plaintiff, his counsel and counsel for McDonald's, Mr. Finger, to discuss potential settlement of

this case.  Specifically, they discussed a written settlement agreement that they and Judge Hughes

had reviewed that day ("Settlement Agreement" or "Agreement").  During that conference, Judge

Hughes confirmed that the parties had discussed and accepted the terms of the Settlement

Agreement.

| | |
|---|---|
| THE COURT: | [We have] [t]he Dweck Plaintiff attorneys and we have Mr. Garbar, previous Plaintiff attorney and we have Mr. Finger representing McDonalds [sic].  It's been reported that the case has settled, is that correct, Mr. Dweck? |
| MR. DWECK: | That is in principle, Your Honor, yes. |
| THE COURT: | Well, let's make it even a little more than in principle.  Has the case settled or not? |
| MR. DWECK: | Your Honor, the best and most forth right [sic] way I could answer you is we have agreed on all of the terms.  I'm prepared to put a stipulation on the record of the basic terms.  Mr. Finger has indicated he prefers to have the settlement supplemented by a formalized, written agreement to which I have indicated I have no objection based upon the draft that he has given me and the terms of which I have worked out with him.  That's why I said, yes, in principle we've agreed on basic terms. |
| THE COURT: | Well, as I've indicated – it's not a question of in principle.  You've agreed to settle the case, as I understand.  It's |

2

simply a matter of reducing to a formalized, written stipulation to be exchanged between the parties, the actual terms of the settlement.  All I want to find out today, since we've spent a considerable amount of time trying to settle the case, is whether the principle [sic] players in the case, that is you as current Plaintiff's attorney, Mr. Garbar as previous Plaintiff's attorney, Mr. Moss as the Plaintiff and Mr. Finger as the attorney for McDonalds [sic] can say that this case is settled.  Can you say that the case is settled, Mr. Dweck?

MR. DWECK:          I think on that basis, the answer is yes, Your Honor.

THE COURT:          I don't want to even think, I want – the answer is yes or not.

MR. DWECK:          The answer is yes, Your Honor.

THE COURT:          Mr. Moss, is the answer yes, have you settled this case?

MR. MOSS:           On the language that my attorney showed me on the agreement, the answer is yes.

THE COURT:          Right, and the agreement – the written agreement we're referencing on this Court hearing is what I have seen in Chambers, Mr. Dweck's – the two Dweck attorneys and Mr. Moss have gone over in detail.  I had some discussion with the Plaintiff about the reason for certain terms in the agreement, particularly a continuing jurisdictional provision that would permit for various triggering events to come back here to enforce the terms of the Settlement and I think, Mr. Moss, have I explained to your satisfaction those terms of the proposed Settlement Agreement and you agree to those terms, is that correct?  Mr. Finger, do you on behalf of McDonalds [sic] agree to the terms of the Settlement?

MR. FINGER:         I do, Your Honor.

*          *          *

THE COURT:          Okay, and I want to indicate just for the record, that – and I don't have to because Mr. Moss, in the presence of his attorney and not only in Settlement discussions and with the Court today, but last week and on numerous previous occasions have had – I've had discussions with Mr. Moss and I'm satisfied that you know – that Mr. Moss is fully aware of the terms of the Settlement, that he's certainly competent to enter into the terms of the Settlement and that he agrees with the Settlement.  I think that given the complexities and the history of this litigation this is an excellent Settlement for both sides of the [a]isle and I am happy to endorse it, although I need not endorse it.  But what I intend to do today, counsel, having heard everyone

3

> give their affirmation on the record as to agreeing to be
> bound by this Settlement, to do a 60 day Order that will
> simply recite that the matter having been reported settled,
> all competing claims are dismissed, including the pending
> motions will be withdrawn without prejudice and what –
> will be withdrawn as moot in view of the Settlement,
> including the Motion for Summary Judgment and the
> Motion for Sanctions and that they'll be in there a
> continuing jurisdiction clause that if there's any problem
> with the Settlement you can come right back before me and
> then I'll handle it . . . .

(Tr. 3-6, July 11, 2005.)  On July 18, 2005, the Court dismissed the case as settled, permitting the

parties to reopen the case within sixty (60) days if the settlement was not consummated.  (Order,

July 18, 2005.)

    On July 20, 2005, Mr. Finger sent copies of the Settlement Agreement to Plaintiff's

counsel for Plaintiff to sign.  (Finger Cert. ¶16.).  Plaintiff did not sign and return those copies.

*Id.*  On October 10, 2005, Plaintiff's counsel wrote to Judge Hughes requesting a conference to

discuss Plaintiff's failure to sign the Settlement Agreement.  (Finger Cert. ¶18; Ex. K.)  On

October 17, 2005, Judge Hughes scheduled the requested conference for October 26, 2005 and

ordered Plaintiff to appear.  (Order, October 17, 2005.)

    During the October 26, 2005 conference, Plaintiff told the Court that he had asked

another attorney to advise him whether he had been coerced or misled into entering the

Settlement Agreement, and whether his attorneys' advice "was tainted by their own self-interest

in avoiding exposure for sanctions."  (Tr. at 8-10, October 26, 2005.)  In response, Judge Hughes

stated that "the July hearing and the reason we did it on the record in Open Court was to

guarantee that nobody was coerced or tricked into anything . . . ."  (*Id.* at 10.)  Judge Hughes

further observed:  "You're an educated, articulate, intelligent person.  And we spent a good hour

going over this . . . .  And for you to come in here, sir, and say that somehow you were coerced is

beyond the pale."  (*Id.*)  Judge Hughes ordered Plaintiff to notify his counsel by November 2,

2005 whether he planned to sign the Settlement Agreement.  (*Id.* at 17.)  On November 2, 2005,

Plaintiff's counsel informed Judge Hughes and Mr. Finger that Plaintiff would not sign it.

(Finger Cert. Ex. N.)

On November 10, 2005, Judge Hughes conducted a conference at which Plaintiff, his counsel and Mr. Finger appeared.  During the conference, Plaintiff complained that he was only "briefly" shown the Settlement Agreement and referred to an unspecified "misrepresentation" by his attorneys.  (Tr. at 3-4, 8-9, November 10, 2005.)  He further stated that he wished to continue the Essex Action and that enforcement of the Settlement Agreement would be against his wishes. (*Id.* at 5.)

During the conference, Judge Hughes once again observed that Plaintiff was competent and acting voluntarily when he told the Court that the case had settled (*Id.* at 5-6), that "there was a binding agreement between Mr. Moss and McDonalds [sic] as to resolution of all the cases with McDonalds [sic]" (*Id.* at 8), and that Plaintiff had not advised the Court that he had doubt about the settlement (*Id.* at 8-9).  According to Judge Hughes:

> There is no question in my mind; number one that Mr. Moss voluntarily, knowingly settled the case with McDonalds [sic] on July 11th.  Arms length negotiation as to the settlement, he was represented by extremely effective attorneys both Dwecks and Mr. Patterson, the attorney of record.  The case involved numerous settlement conferences.  Mr. Moss was involved every step of the way.  He came to Court as the Party-In-Interest.  He participated in settlement conferences with me, he was present at all Motion practice[.]  [I]f there was any litigant more aware of what was going on in his or her case than Mr. Moss, I am not aware of such a person.  To come in now and attempt to renege on the agreement certainly invites a Motion for fees and finding of bad faith on the part of Mr. Moss in the wake of the Settlement Agreement on July 11th and that awaits the Judgment on another day, and I just indicate for the record that there is no question in my mind that there was an agreement on July 11th.  Mr. Moss voluntarily[,] knowingly entered into that agreement of his own free will, that he was adequately and well represented by counsel, and that for him to seek to get out from under an agreement he made in open Court, in Federal Court invites the Motion practice.

(*Id.* at 9-10.)

McDonald's filed the instant motion on December 9, 2005.  On December 29, 2005, Plaintiff's counsel filed a certified statement of facts concerning the Settlement Agreement.  According to that statement, "[i]t is and was my understanding that as of July 11, 2005, the instant action, as well as [the] two other actions commenced by Plaintiff as referred to in the

instant motion, were fully resolved[,]" and that "[a]s an officer of the Court and pursuant to my ethical obligations as an attorney and counselor at law, I am unable in good faith to oppose the request by McDonald's to enforce the Settlement Agreement between Plaintiff and McDonald's." (Dweck Cert. ¶3.)  No additional papers have been filed in response to the instant motion.

## II.    DISCUSSION

### A.    Whether the Settlement Agreement Allegedly Entered Into by the Parties on July 11, 2005 Is Enforceable

"State law governs the construction and enforcement of settlement agreements in federal court." *Excelsior Ins. Co. v. Pennsbury Pain Ctr.*, 975 F. Supp. 342, 348-49 (D.N.J. 1996). Under New Jersey state law, "[a]n agreement to settle a lawsuit is a contract which, like all contracts, may be freely entered into[,] and which a court, absent a demonstration of 'fraud or other compelling circumstances,' should honor and enforce as it does other contracts." *Pascarella v. Bruck*, 190 N.J. Super. 118, 124-25 (App. Div. 1983) (internal quotations omitted). According to the court in *Pascarella*, "[t]hat the agreement to settle was orally made is of no consequence, and the failure to do no more than . . . inform the court of settlement and have the clerk mark the case settled has no effect on the validity of a compromise disposition." *Id.* at 124. "Adoption of a principle that such agreements are subject to attack because they were not placed upon the record places in unnecessary jeopardy the very concept of settlement and the process by which settlement of litigation is ordinarily achieved." *Id.*  "[S]o long as the parties agree upon the essential terms of a settlement, leaving the details to be 'fleshed out' in a writing thereafter, courts will enforce settlement agreements notwithstanding the absence of a future writing." *Excelsior Ins. Co.*, 975 F. Supp. at 349 (citing *Lahue v. Pio Costa*, 263 N.J. Super. 575, 596 (App. Div. 1993); *Hagrish v. Olson*, 254 N.J. Super. 133, 138 (App. Div. 1992)).  *See also Williams v. Vito*, 365 N.J. Super. 225, 232 (Law Div. 2003) ("'The manifestation of assent may be made wholly or partly by . . . spoken words . . .' [and] [t]he existence of an enforceable contract is not negated by the fact that subsequent writings are contemplated") (citations

omitted).  Moreover, the Third Circuit Court of Appeals has made clear that "[a]n agreement to settle a law suit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court, and even in the absence of a writing."  *Green v. John H. Lewis & Co.*, 436 F.2d 389, 390 (3d Cir. 1970).  *See also Good v. Pennsylvania R.R. Co.*, 384 F.2d 989, 990 (3d Cir. 1967) ("[t]he settlement agreement which was entered into by duly authorized counsel expressed the intention to settle the case for the agreed amount and was valid and binding despite the absence of any writing or formality").

Here, the Settlement Agreement is valid and enforceable.  Counsel for the parties and Plaintiff himself reviewed the terms of the Settlement Agreement during the settlement negotiations on July 11, 2005, as well as on prior occasions.  (Dweck Cert. ¶4.)  After discussing those terms, Plaintiff expressly stated to the Court that he accepted the terms of the Settlement Agreement.  (Tr. at 4, July 11, 2005.)  Indeed, Plaintiff's counsel has certified that there was such an oral agreement.  (*Id*. ¶¶3-7.)  Based on these facts, the Court finds that the Settlement Agreement discussed during the July 11, 2005 conference is enforceable.

### B.   Whether Plaintiff Should Pay Damages for His Alleged Violation of the Terms of the Settlement Agreement

McDonald's also seeks damages for Plaintiff's alleged violation of the terms of the Settlement Agreement.  The Agreement provides that "[i]n the event that a court of competent jurisdiction determines that PLAINTIFF breached any other provision of this Agreement, . . . PLAINTIFF acknowledges and agrees that damages for any such breach are not easily discernable, and further acknowledges and agrees that he will pay to MCDONALD'S CORPORATION the amount of TWENTY THOUSAND DOLLARS ($20,000.00) for each such breach as liquidated damages . . . ."  (Settlement Agreement ¶17(b).)

McDonald's provided the above-quoted portion of the Settlement Agreement in its brief, but has not otherwise supplied the Court with a copy of the Settlement Agreement, either in whole or in part.  Nor has McDonald's identified the specific provisions that Plaintiff has

violated.  Without a copy of the Agreement, and without reference to the specific provisions that Plaintiff has allegedly violated, the Court is currently unable to find that Plaintiff breached the Agreement.

### C.        Whether Sanctions Against Plaintiff Is Appropriate

"[I]t is well-established that courts have the power to impose sanctions on both litigants and attorneys to regulate their docket, to promote judicial efficiency, and to deter abuse of judicial process." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 505 (3d Cir. 1991) (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764-65 (1980)).

In exercising its inherent power, "a court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (citations omitted).  In such cases, the imposition of sanctions "transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of 'vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy.'" *Id.* at 46 (quoting *Hutto v. Finney*, 437 U.S. 678, 689 n.14 (1978)).

This inherent power, however, "must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44.  "Although a court retains the inherent right to sanction when rules of court or statutes also provide a vehicle for sanctioning misconduct, resort to these inherent powers is not preferred when other remedies are available." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 278 F.3d 175, 189 (3d Cir. 2002).  "[G]enerally, a court's inherent power should be reserved for those cases in which the conduct of a party or an attorney is egregious and no other basis for sanctions exists.'" *Id.* (quoting *Martin v. Brown*, 63 F.3d 1252, 1265 (3d Cir. 1995)).  "But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power." *Chambers*, 501 U.S. at

50.

A court must determine whether the party being sanctioned acted in bad faith before using its inherent power to impose sanctions.  "A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees . . . ."  *Id.*  "A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process."  *Id.* at 44.

McDonald's has not addressed whether other sources of authority for sanctioning Plaintiff are available to the Court.  A survey of potential alternatives, however, suggests that they would not apply to the behavior in question.  *See Republic of the Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 73 (3d Cir. 1994) (identifying and describing numerous sources of authority for sanctioning parties "who fail to meet minimum standards of conduct in many different contexts").  *See* Fed. R. Civ. P. Rules 11 (groundless pleadings and other papers); 16(f) (failing to abide by pretrial orders); 26(g), 30(g), 37(d) and 37(g) (discovery abuses); 41(b) (involuntary dismissal for failure to prosecute, follow rules or obey a court order); 45(e) (disobeying subpoena); 56(g) (providing affidavit at summary judgment in bad faith or for delay).  *See also* 18 U.S.C. § 401 (contempt power); 28 U.S.C. § 1927 (punishing attorneys who vexatiously multiply proceedings).

On July 11, 2005, in the presence of his counsel, counsel for McDonald's and Judge Hughes, Plaintiff stated that he had reviewed and accepted the terms of the Settlement Agreement.  He did so voluntarily and knowingly.  Since that time, he has repeatedly attempted to disclaim that acceptance.  He has done so by failing to sign and return a formal copy of the Settlement Agreement, stating to Judge Hughes during the October 26, 2005 conference that he had not understood the terms of the Agreement, informing his counsel on or about November 2, 2005 that he would not sign the Agreement and stating to Judge Hughes during the November 10, 2005 conference that he did not agree to the terms of the Agreement.  In light of Plaintiff's

9

persistent refusal to acknowledge the validity of the Settlement Agreement, as well as the repeated attempts by his counsel, counsel for McDonald's and Judge Hughes to resolve this matter, and considering the fact that approximately eight (8) months have passed since the parties entered the Agreement, a sanction against Plaintiff for attorney's fees incurred as a result of Plaintiff's bad-faith conduct is appropriate.

### III.   CONCLUSION

For the above reasons, the instant motion is granted in part and denied in part. Specifically, the Court:  (1) grants the motion to enforce the Settlement Agreement; (2) denies the motion for damages for breach of the Agreement; and (3) grants the motion for sanctions against Plaintiff.  An appropriate form of order is filed herewith.

Dated:  March 13th, 2006

s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.